UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MICHELE WINTER,

                                        Plaintiff,

                                                                                           Case # 18-CV-632-FPG

v.

                                                                                            DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.
_____

## INTRODUCTION

Plaintiff Michele Winter brings this action pursuant to the Social Security Act seeking review of the final decision of the Commissioner of Social Security that denied her application for Disability Insurance Benefits ("DIB") under Title II of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. § 405(g).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 11, 14. For the reasons that follow, the Commissioner's motion is DENIED, Winter's motion is GRANTED, and this matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion.

## BACKGROUND

In June 2014, Winter applied for Disability Insurance Benefits ("DIB") under Title II of the Act with the Social Security Administration (the "SSA"). Tr.[1] 21. She alleged disability beginning in October 2013 due to herniations in her neck and back, nerve damage, hand and wrist injuries, celiac artery compression syndrome, headaches, high blood pressure, depression, panic disorder, PTSD, and ADHD. Tr. 21, 220, 252. In February 2017, Winter and a vocational expert

---

[1] "Tr." refers to the administrative record in this matter. ECF No. 7.

1

appeared at a video hearing before Administrative Law Judge Paul Greenberg ("the ALJ"). Tr. 21, 35. On May 1, 2017, the ALJ issued a decision finding that Winter was not disabled. Tr. 21–35. On April 9, 2018, the Appeals Council denied Winter's request for review. Tr. 1–3. This action seeks review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I.   District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks omitted); *see also* 42 U.S.C. §§ 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotation marks omitted). It is not the Court's "function to determine *de novo* whether [plaintiff] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (alteration in original, internal quotation marks omitted).

### II.  Disability Determination

An ALJ must follow a five-step sequential evaluation process to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of New York*, 476 U.S. 467, 470–71 (1986); 20 C.F.R. § 404.1520(a). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled. *Id.* If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning

of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(a)(4)(ii), (c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." *Id.* § 404.1520(a)(4)(ii). If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(a)(4)(iii). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id.* If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations caused by his or her collective impairments. *See id.* § 404.1520(a)(4)(iv), (e)–(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits claimant to perform the requirements of his or her past relevant work. *Id.* § 404.1520(a)(4)(iv). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 404.1520(a)(4)(v), (g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (internal quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

**DISCUSSION**

**I.     The ALJ's Decision**

The ALJ analyzed Winter's claim for benefits using the process described above. At step one, the ALJ found that Winter had not engaged in any substantial gainful activity since her alleged onset date. Tr. 23. At step two, the ALJ found that Winter had two severe impairments: multilevel degenerative disc disease and carpal tunnel syndrome. *Id.* At step three, the ALJ found that these impairments did not meet or medically equal any Listings impairment. Tr. 26.

Next, the ALJ determined that Winter had the RFC to perform light work with additional limitations. Tr. 26–33. Specifically, the ALJ found that Winter could: frequently balance and stoop; occasionally kneel, crouch, crawl, and climb ramps and stairs; and frequently handle and finger bilaterally. *Id.* The ALJ further found that Winter could not: perform work while climbing ladders, ropes, or scaffolds; work around unprotected heights or moving mechanical parts; or operate motorized equipment as part of her job. *Id.* The ALJ also found that Winter needed to sit for five minutes after standing for twenty-five minutes or stand for five minutes after sitting for twenty-five minutes, but that she could continue working in either position. *Id.* At steps four and five, the ALJ found that Winter could not perform her past relevant work but that there were jobs that existed in significant numbers in the national economy that she could perform. Tr. 33–34. The ALJ therefore found that Winter had not been disabled from October 1, 2013 through the date of his decision. Tr. 35.

**II.   Analysis**

Winter argues that the ALJ's RFC determination with respect to her mental impairments was not supported by competent medical opinion. ECF No. 11-1 at 25–28.[2] The Court agrees.

As an initial matter, the ALJ found that Winter's mental impairments were not "severe" at step two of the sequential evaluation process. Tr. 23–26. The ALJ, however, went on to consider Winter's alleged mental impairments in determining her RFC. Tr. 26–33. Winter briefly argues that the ALJ's step two determination regarding her mental impairments was improper but devotes most of her argument to the ALJ's RFC determination. ECF No. 11-1 at 25–28. The Court need not examine the ALJ's step two determination. If an ALJ finds at least one "severe" impairment, the "ALJ still must consider the impact of all of a claimant's medically determinable impairments when assessing a claimant's RFC" "[r]egardless of whether an impairment qualifies as severe or nonsevere at step two." *Boudreau v. Comm'r of Soc. Sec.*, No. 18-CV-6681, 2020 WL 1501752, at *4 (W.D.N.Y. Mar. 30, 2020) (citing 20 C.F.R. § 404.1545(a)(2)). Any error at step two would be harmless if the Court finds that the ALJ adequately accounted for Winter's mental impairments in his RFC determination. *See, e.g.*, *London v. Comm'r of Soc. Sec.*, 339 F. Supp. 3d 96, 106–07 (W.D.N.Y. 2018). Accordingly, the Court turns directly to the question of whether the ALJ's RFC determination appropriately addressed Winter's mental impairments.

"[T]he Commissioner's procedures do not permit the ALJ to simply rely on his finding of non-severity as a substitute for a proper RFC analysis." *MacDonald v. Comm'r of Soc. Sec.*, No. 17-CV-921, 2019 WL 3067275, at *3 (W.D.N.Y. July 11, 2019) (alteration in original) (quoting *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013)). If an ALJ finds that nonsevere impairments

---

[2] Winter also argues for reversal of the Commissioner's decision on other grounds. ECF No. 11-1 at 20–25, 28–29. The Court declines to address those arguments because remand is appropriate based on the ALJ's error in analyzing Winter's alleged mental impairments.

5

result in "mild" restrictions, the ALJ must analyze those restrictions in determining the claimant's RFC. *Id.* If the ALJ "fails to address nonsevere mental impairments in formulating a claimant's RFC, it is 'necessary to remand [the] case for further consideration.'" *Id.* (alteration in original) (quoting *Parker-Grose v. Astrue*, 462 F. App'x 16, 18 (2d Cir. 2012) (summary order)).

In most cases in which this Court has remanded based on an ALJ's failure to examine non-severe mental impairments as part of her RFC determination, the ALJ either did not discuss the impairments in his or her RFC assessment, *e.g.*, *Dale v. Colvin*, No. 15-CV-496, 2016 WL 4098431, at *4 (W.D.N.Y. Aug. 2, 2016), or merely included boilerplate language and/or made a few references to related evidence, *e.g.*, *Rogers v. Berryhill*, No. 16-CV-6349, 2017 WL 3483666, at *4 (W.D.N.Y. Aug. 15, 2017). Here, however, the ALJ analyzed Winter's mental impairments in his RFC analysis. Accordingly, the Court must determine whether the ALJ's "specific conclusions" were supported by substantial evidence. *Wells*, 727 F.3d at 1065 n.3 ("[T]he ALJ . . . f[ou]nd 'mild' restrictions in three of the relevant functional areas, requiring further analysis [in his RFC assessment].").

An RFC determination does not have to "perfectly correspond" with the medical source opinions cited in the ALJ's decision; rather, the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order). But "[a]n ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Wilson v. Colvin*, No. 13-CV-6286, 2015 WL 1003933, at *21 (W.D.N.Y. Mar. 6, 2015). In other words, an ALJ's ability to make inferences about the functional limitations caused by an impairment does

6

not extend beyond that of an ordinary layperson. *Agostino v. Comm'r of Soc. Sec.*, No. 18-CV-1391, 2020 WL 95421, at *3 (W.D.N.Y. Jan. 8, 2020).

Here, the ALJ found that Winter had medically determinable mental impairments of affective disorder, anxiety disorder, posttraumatic stress disorder, and attention deficit hyperactivity disorder that, in combination, resulted in no "more than minimal limitation in [Winter]'s ability to perform basic mental work activities." Tr. 24. Specifically, the ALJ found that these impairments caused mild limitations in understanding, remembering, or applying information; interacting with others; and concentrating, persisting, or maintaining pace. Tr. 24–25.

In his RFC analysis, the ALJ primarily focused on Winter's physical impairments, but the ALJ explicitly weighed three opinions regarding Winter's mental limitations. Tr. 26–33. He gave "partial weight" to the opinions of consultative examiner Susan Santarpia, Ph.D., and State agency consultant M. Totin, Ph.D. Tr. 32–33. Dr. Santarpia reported that her evaluation of Winter appeared "consistent with psychiatric problems that at times may interfere with [Winter]'s ability to function on a daily basis." Tr. 613. She specifically noted that "[m]oderate impairment [wa]s demonstrated in learning new tasks, performing complex tasks independently, and relating adequately with others." *Id.* Dr. Totin assessed Winter as having moderate difficulties in social functioning, in performing at a consistent pace, and in carrying out detailed instructions. Tr. 148–50. Dr. Totin concluded that Winter appeared to retain "the capacity to perform simple tasks in a position that involves low contact with others." Tr. 144.

The ALJ gave "limited weight" to the opinion of Michael Mogerman, M.D., a treating source for Winter. Tr. 33. Dr. Mogerman concluded that Winter had sundry mental impairments, including "poor" to no ability in multiple functional areas (such as accepting instructions and

7

responding appropriately to criticism from supervisors). Tr. 994–96. The ALJ declined to credit Dr. Mogerman because his opinion was in checklist form with limited narrative and was inconsistent with both the routine care described in his treatment records and Winter's 30-year work history.[3] Tr. 33.

Despite claiming to give "partial weight" to two of the relevant medical opinions, the ALJ clearly rejected the conclusions of those opinions as to residual functional capacity and instead opted to reach his own conclusion regarding Winter's functional limitations. Tr. 32–33; *York v. Comm'r of Soc. Sec.*, 357 F. Supp. 3d 259, 261–62 (W.D.N.Y. 2019) (holding that, although ALJ gave "partial" weight to "the only medical opinion evidence of record," the ALJ's rejection of the assessment in relevant part "based upon the ALJ's own lay interpretation of raw medical data" was "not supported by substantial evidence"); *see also Garrett v. Comm'r of Soc. Sec.*, No. 17-CV-1009, 2019 WL 2163699, at *5 (W.D.N.Y. May 17, 2019) ("By not assigning significant weight to any opinions and, instead, assigning them only limited weight, the ALJ created an evidentiary gap in the record requiring remand.").

All three doctors assessed at least moderate impairment in Winter's social functioning; yet, even with medical findings of affective disorder, anxiety disorder, posttraumatic stress disorder, and attention deficit hyperactivity disorder, the ALJ assigned no corresponding mental limitation in his RFC assessment. Tr. 24, 33. The ALJ is prohibited from rejecting all opinion evidence and

---

[3] The Court doubts that Winter's pre-onset-date work history could serve as a valid basis for discounting Dr. Mogerman's post-onset-date assessment of Winter's functional capacity. *See Wells*, 727 F.3d at 1069–71 (rejecting ALJ's reliance on statement made regarding claimant's daily activities and employment before her alleged onset date and noting "the ALJ's . . . use of pre-onset date work cast doubt on the validity of his analysis").

Similarly, the ALJ noted that Winter "has no history of difficulty getting along with others" in his analysis of severity at step two. Tr. 25. But again, the ALJ appears to be referring to Winter's ability to work before her onset date. Tr. 25, 273 Although the ALJ did not specifically reference Winter's history of getting along with others in his RFC analysis, this pre-onset-date history does not support the ALJ's RFC findings.

"playing doctor." *Johnson v. Comm'r of Soc. Sec.*, 351 F. Supp. 3d 286, 292 (W.D.N.Y. 2018) (internal quotation marks omitted); *Cutre v. Berryhill*, No. 17-CV-135, 2018 WL 3968385, at *3–4 (W.D.N.Y. Aug. 20, 2018) (holding that it was error for ALJ to formulate RFC after rejecting the only medical opinions regarding claimant's mental ability to work). Absent other medical evidence of a claimant's functional limitations, an ALJ's rejection of all medical opinions in the record creates "an evidentiary gap in the record requiring remand." *Zayas v. Colvin*, No. 15-CV-6312, 2016 WL 1761959, at *4 (W.D.N.Y. May 2, 2016); *see also Defrancesco v. Berryhill*, No. 16-CV-6575, 2017 WL 4769004, at *4 (W.D.N.Y. Oct. 23, 2017) (holding that ALJ giving "little weight" to "the only physical medical opinion in the record created an evidentiary gap that require[d] remand"). Here, the ALJ rejected all relevant medical opinions and created such an evidentiary gap. *See Davis v. Saul*, No. 17-CV-167, 2019 WL 6682159, at *4 (W.D.N.Y. Dec. 6, 2019) (holding that, where ALJ assigned "greater weight" to a medical opinion that assessed "mild" limitations in a claimant's ability to work, ALJ erred in not addressing how the "mild limitations affected [claimant's] ability to work or incorporat[ing] any mental health limitations into the RFC"); *Truby v. Comm'r of Soc. Sec.*, No. 18-CV-6069, 2019 WL 2295403, at *3–4 (W.D.N.Y. May 30, 2019) ("[T]he ALJ appears to have relied on raw medical data and his own lay opinion to reach this conclusion, because he ignored the only medical opinions as to how [claimant]'s mental limitations would or would not affect his ability to work.").

Even assuming the ALJ did not create an evidentiary gap, the ALJ's rejection of the relevant medical opinions does not appear to be supported by substantial evidence and "[a]n ALJ may not 'cherry pick' from a medical opinion, *i.e.*, he or she may not credit evidence that supports administrative findings while ignoring conflicting evidence from the same source." *Zayas*, 2016 WL 1761959, at *4 (collecting cases); *see also Pritchard v. Comm'r of Soc. Sec.*, No. 18-CV-

9

1460, 2020 WL 553575, at *3–4 (W.D.N.Y. Feb. 4, 2020) (holding that remand was appropriate where the RFC was "completely devoid of any limitations accounting for Plaintiff's mental impairments" and ALJ's "reason for assigning different weights to parts of [a medical] opinion [wa]s not supported by substantial evidence").

The ALJ credited Dr. Santarpia as an independent examiner, familiar with the SSA program. Tr. 32. But, the ALJ discounted all of Dr. Santarpia's findings with respect to functional limitations. Tr. 32–33. The ALJ also described Dr. Santarpia's report as linking Winter's mental limitations to associated "stressors." Tr. 32. But neither Dr. Santarpia nor the ALJ specifically examined what those stressors were and the ALJ made no finding that those stressors would be accounted for by his RFC determination. Tr. 32–33, 610–14; *see Collins v. Colvin*, No. 15-CV-423, 2016 WL 5529424, at *3 (W.D.N.Y. Sept. 30, 2016) (noting that "stress is 'highly individualized'").

The ALJ found that Dr. Totin's opinion was "derivative" of Dr. Stantarpia's opinion, and therefore, discounted it for the same reasons. Tr. 33. It is true that Dr. Santarpia's opinion was available to Dr. Totin. Tr. 140. Dr. Totin, however, did not simply rely on Dr. Santarpia's opinion. He specifically found that her opinion, coupled with other evidence, was insufficient to support a decision on Winter's claim and he made distinct findings regarding Winter's functional capacity. Tr. 142, 148–50. It does not appear that the ALJ's wholesale rejection of Dr. Totin's conclusions regarding Winter's mental limitations was supported by substantial evidence.

In short, remand is required for further development of the record. *See Winters v. Comm'r of Soc. Sec.*, No. 18-CV-1049, 2020 WL 1061491, at *6 (W.D.N.Y. Mar. 5, 2020) ("[B]y discounting all medical opinions of record . . . the ALJ was left without a proper assessment of Winters's limitations, causing the ALJ to improperly render an RFC assessment based on his own

lay opinion. Under the circumstances of this case, remand is required for the ALJ to resolve the gaps created in the medical record."); *York*, 357 F. Supp. 3d at 262–63 (finding that remand for further proceedings was necessary where ALJ rejected only medical opinion evidence of record); *Reed v. Comm'r of Soc. Sec.*, No. 18-CV-169, 2019 WL 4643605, at *3 (W.D.N.Y. Sept. 24, 2019) ("[E]ven if substantial evidence supports the ALJ's determination that plaintiff's mental health impairments are not severe at Step Two, remand is still necessary for further consideration because the ALJ failed to account [for plaintiff's] mental health limitations." (internal quotation marks omitted)).

## CONCLUSION

For all of the reasons stated, the Commissioner's Motion for Judgment on the Pleadings, ECF No. 14, is DENIED and Winter's Motion for Judgment on the Pleadings, ECF No. 11, is GRANTED. This matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: May 12, 2020
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court